Defendant Phillip Dula has appealed from a conviction for corruption of a minor, a violation of Section 2907.04 of the Ohio Revised Code. He has argued: (1) that the trial court incorrectly allowed the State to reopen its case-in-chief after having rested and following a defense motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure; (2) that, when his trial counsel failed to object to the trial court's decision to allow the State to reopen its case-in-chief, he was denied his right to effective assistance of counsel; and (3) that the trial court's guilty finding on the charge of corruption of a minor was against the manifest weight of the evidence.[1] This Court affirms defendant's conviction because: (1) the trial court's decision to allow the State to reopen its case was not arbitrary, unreasonable, or unconscionable; (2) even assuming that his counsel's performance was ineffective, he has failed to show that he was prejudiced by that ineffectiveness; and (3) after reviewing the entire record, this Court concludes that the trial court did not clearly lose its way and create such a manifest miscarriage of justice that defendant's conviction must be reversed and a new trial ordered.
 I.
Defendant was indicted for corruption of a minor based on an event that allegedly occurred on March 25, 1997. He waived his right to a jury and was tried to the court on January 8, 1998. At trial, the victim, a 14 year-old girl, testified that defendant had performed oral sex on her and digitally penetrated her. Defendant claimed that the alleged events did not occur. He claimed that the victim jumped on his head while he was trying to use the telephone and he panicked because he was unable to breathe. He claimed that he tried to grab at her to throw her off of his head and may have accidentally touched her breast, but had not performed any of the alleged acts. The trial court found defendant guilty of one count of corruption of a minor. Defendant timely appealed to this court.
 II. A.
Defendant's first assignment of error is that the trial court incorrectly allowed the State to reopen its case-in-chief after having rested and following a defense motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure. When the State announced during the trial that it rested its case, defendant promptly moved the court for acquittal. He argued that the state had failed to present any evidence that he was eighteen years old or older. Because the age of the defendant was an essential element of the crime of corruption of a minor, the State had the burden of proving that defendant was eighteen years old or older beyond a reasonable doubt.
In response to his motion, the trial court noted that it was obvious to the court that defendant was older than eighteen. It allowed the State, however, to reopen its case to present evidence of defendant's age. Defendant failed to object to the trial court's decision to allow the State to present evidence of defendant's age. In essence, he has argued to this Court that, because the State had not met its burden of proof at the close of its case, the trial court was required to dismiss the indictment when he moved for an acquittal.
"Generally, an appellate court will not consider any error that counsel could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Peagler
(1996), 76 Ohio St.3d 496, 499. Defendant, therefore, by failing to object to the reopening of the State's case during the trial, has waived all but plain error. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
This Court has previously held that the decision to reopen a case for the presentation of further evidence is within the trial court's sound discretion and will only be disturbed if it amounts to an abuse of discretion. State v. Austin (Dec. 8, 1993), Summit App. No. 16239, unreported, at 3-4, citingColumbus v. Grant (1981), 1 Ohio App.3d 96, 97. To constitute an abuse of discretion, a trial court's action must have been arbitrary, unreasonable, or unconscionable. See State ex rel. VCos. v. Marshall (1998), 81 Ohio St.3d 467, 469.
The trial court did not act in an unreasonable or arbitrary manner in this case. It noted that it was obvious that defendant was over the age of eighteen and that there was probably enough circumstantial evidence of defendant's age already in evidence.[2] As the trier of fact, the trial court could have reasonably inferred from observing defendant that he was older than eighteen years of age. State v. Price (1992),80 Ohio App.3d 35, 43. Even if the trial court's decision to allow the state to reopen its case could be viewed as unreasonable or arbitrary, the court's decision did not cause a manifest miscarriage of justice and, therefore, was not plain error. Defendant's first assignment of error is overruled.
 B.
Defendant's second assignment of error is that, when his trial counsel failed to object to the trial court's decision to allow the State to reopen its case-in-chief, he was denied his right to effective assistance of counsel. An attorney's performance is ineffective only if it falls below an objective standard of reasonable representation and results in prejudice to the defendant. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To show prejudice, a defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus.
Defendant has failed to demonstrate that he was prejudiced by his trial counsel's performance, even assuming that the performance was deficient. The State had presented sufficient circumstantial evidence of defendant's age prior to reopening its case for the trial court to find beyond a reasonable doubt that defendant was older than eighteen. The trial court noted that the defendant was obviously older than eighteen before it allowed the State to reopen its case. In view of the evidence presented at trial, this Court cannot conclude that the verdict would have been different if the State had not been allowed to present further evidence regarding defendant's age. Defendant's second assignment of error is overruled.
 C.
Defendant's third assignment of error is that the trial court's finding of guilt on the charge of corruption of a minor was against the manifest weight of the evidence. To determine whether a conviction is against the manifest weight of the evidence, an appellate court must review and weigh the evidence:
 The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether[,] in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175; see, also,State v. Otten (1986), 33 Ohio App.3d 339, 340.
Defendant was convicted of corruption of a minor, a violation of Section 2907.04 of the Ohio Revised Code. Section 2907.04
prohibits any person who is eighteen years of age or older from engaging in sexual conduct with another, not the spouse of the offender, when the offender knows that the other person is thirteen years of age or older but less than sixteen years of age.
At trial, the State presented testimony from the victim and the victim's mother regarding the relationship between the victim and defendant. The victim's mother was a foster-child of defendant's parents. The victim, who was thirteen at the time of the incident, had known defendant all of her life. She often visited the home of defendant and had a close relationship with defendant's son. The victim testified that, on March 25, 1997, she was visiting defendant's home with two other girls. She testified that she went upstairs to the bedroom of defendant's son to use the telephone. According to her, defendant entered the room and locked the door. Defendant pulled up her shirt and placed his hands and then his mouth on her breasts. Defendant then told the victim that he would like to perform oral sex on her, to which she responded that she did not want him to do that. Defendant told the victim to lie down on the bed. He then pulled her pants and her underwear down around her ankles. He proceeded to perform oral sex on her and placed a finger in her vagina.
After approximately half an hour, defendant told the victim that he would like to give her a backrub, but the victim told him that she had to use the bathroom. The victim waited in the bathroom until defendant went back down stairs, then she made a telephone call to a friend. At some point, she told her friend what had happened to her. She asked her friend to tell her mother about the incident because she did not think that she would be able to do so herself.
Eventually, the police were informed of the incident and, on April 8, 1997, a police officer requested that the victim place a telephone call to defendant and allow the conversation to be recorded. The victim and her mother agreed. The conversation between defendant and the victim was brief. The victim stated that she was afraid to go back to defendant's house and mentioned concerns about pregnancy. In response, defendant told her that she had nothing to worry about.
On April 9, 1997, the officer went to defendant's house and asked him to go down to the police station to answer a few questions. At the police station, the officer informed defendant that he was not under arrest, but read him his Miranda rights. The officer informed defendant of the allegations that the victim had made. According to the officer's testimony, defendant initially seemed "set back" by the allegations and said that they were not true. A few minutes later, defendant stated that the allegations were not completely true and that he had "an ace up his sleeve." When the officer asked what that meant, defendant refused to answer. The officer played the taped phone conversation for defendant. After hearing the tape, defendant requested an attorney.
Following defendant's motion for an acquittal and the trial court's order allowing the State to reopen its case, the State called the victim's mother to provide further testimony regarding defendant's age. She testified that she was thirty-two years old and had gone to live with defendant's mother when she was ten years old. She testified that she did not know defendant at that time because he was already grown and had moved out of Ohio. Finally, she testified that she met defendant when she was eighteen years old and that he was older than she was.
Defendant was the sole witness for the defense. He testified that he did not commit any of the acts alleged by the victim. According to him, he went upstairs to tell the victim that dinner was ready. She was on the telephone and he asked her to hang up. He sat on the footboard of the bed and began to make a telephone call to a friend from whom he had been expecting a call. While he was bent over dialing the telephone, the victim climbed on the bed behind him and jumped on top of his head in a playful manner. He was having difficulty breathing with her on his head, and he was beginning to panic. He testified that this was the second time she had done something like that and that he had warned her not to do it again. Defendant said that he grabbed at her and threw her into a wall. He said that she had a funny look on her face, but she did not appear to be injured. He said that she appeared to be upset with him, but never mentioned anything about it. He and the victim went back down stairs and ate dinner. After dinner, he cleaned up the kitchen, had a cigarette, and then took the girls home.
When asked about the taped telephone conversation with the victim, defendant testified that he thought the victim was afraid to come visit because he had thrown her into the wall. At the time of the telephone call, according to defendant, he had been sleeping. He testified that he had taken pain pills because he had had most of his teeth removed prior to the incident alleged by the victim. When the victim said "pregnant" on the telephone, according to defendant, he thought that she had mistakenly believed that he was "coming on" to her when he was grabbing at her to get her off of his head. When asked what he had meant by having "an ace up his sleeve," he testified that he had just had all of his teeth removed and had stitches in his mouth so he would not have been able to perform oral sex on the victim.
The trial court found that the victim had no motive to fabricate, but even if she had, defendant's tone of voice and what was said on the tape led the court to believe that the incident did occur. Further, the court, throughout the trial, had the opportunity to observe defendant. After reviewing the record, this Court does not find that the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Defendant's third assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Wayne, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 -------------------- CLAIR E. DICKINSON FOR THE COURT
BAIRD, P. J., CARR, J., CONCUR
[1] Defendant's assignments of error have been rearranged for ease of discussion.
[2] The State presented testimony that defendant had a son and that his son and the victim were close friends. Further, the State presented testimony that the victim's mother was the foster-sister of defendant. The victim and her mother testified that they had known defendant for fourteen years.